IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) 2:25-cr-287 |
| | ) |
| | ) Honorable J. Nicholas Ranjan |
| MARISSA LYNN SEGAL | ) United States District Court Judge |

**MEMORANDUM IN AID OF SETENCING**

AND NOW comes Defendant, Marrisa Lynn Segal (hereinafter "Marissa," "Mara," or "Ms. Segal") by her attorney, Michael E. Waltman, Esquire, who respectfully submits this Memorandum in Aid of Sentencing:

## I.    INTRODUCTION

On January 12, 2026, Ms. Segal waived her right to an Indictment and entered a guilty plea to a two-count Information which had been filed on November 25, 2025. That Information charged Ms. Segal with Distribution of Material Depicting the Sexual Exploitation of a Minor, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), and Possession of Material Depicting the Sexual Exploitation of a Minor, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).

Pursuant to Rule 11(c)(1)(C), the parties stipulate and agree that the appropriate sentence in this case is a term of imprisonment to be determined by this Honorable Court of not less than 7.5 years and not more than 10 years.

For the legal and factual reasons set forth below, Ms. Segal respectfully requests this Honorable Court sentence her to a term of imprisonment of not more than 7.5 years (90 months).

Ms. Segal respectfully submits that the requested sentence is legally appropriate, factually supported, and sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in Section 3553(a)(2): (a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide just punishment); (b) deterrence; (c) incapacitation (to protect the public from further crimes); and (d) rehabilitation (to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner).

## II.    SOCIAL HISTORY

Ms. Segal grew up in a normal and loving working-class Western Pennsylvanian family.  Her parents, who have been married for 38 years, always maintained employment and were able to provide for Marissa (Mara as her friends and family call her) and her older sister.  Their house was free from drug, alcohol, and physical abuse and the two girls never felt as if they went without.  Of course, like any family, there were different personalities at play, but generally, Ms. Segal describes a relatively happy childhood as it relates to her sister and her parents.

Despite this loving home, Mara lived, until recently, with the secret that she had been abused by an older male cousin from the age of approximately 6 years old to approximately 10 years old.  A fact she only recently disclosed to her family and friends. Through group counseling at the Butler County Prison, Marissa has been attempting to

work through that childhood trauma, and hopes that she can continue to work through it while incarcerated in the custody of the BOP.  Ms. Segal would like to make it expressly clear that she has disclosed this childhood trauma not for the purposes of garnering any type of sympathy or to in any way excuse her behavior here, but, instead, to demonstrate her willingness and desire to begin the process of addressing the underlying psychological issues that contributed to her egregious behavior.  Behavior that Ms. Segal is well aware (and deeply ashamed) contributed to the direct harm to a child.

To say that Marissa's friends and family were shocked when the allegations came to light would be an understatement.  Individuals in our society are quick to articulate some level of "shock" when they learn a person they know has been accused of sexually abusing a child.  But to hear it from Marissa's family and friends, every action and moment of Marissa's life has been antithetical to the crimes she committed.  Marissa is known as the kind, thoughtful, and good-intentioned friend to turn to in a time of need. In his letter of support for Marissa, Brian Donehue reflects that as early as the fifth grade, Marissa consciously made her home a safe space for him so that he could avoid the chaos and abuse of his own home.  (Brian Donehue letter of support attached hereto as "Exhibit A").  Marissa's sister-in-law, Stevie Prugar, writes in her letter of support that Marissa "is the kind of person you rely on when you need someone dependable, compassionate, and steady."  Further writing that "her kindness and perspective helped shape the positive life I now lead."  (Stevie Prugar letter of support attached hereto as "Exhibit B").  Marissa's siter, Alicia Prugar, describes Marissa as the glue to the family, writing about when Alicia had a falling out with their parents "During that time, Mara was a steady source of

3

support for me.  She reminded me that love is what matters most and encouraged me to follow my heart." (Alicia Prugar letter of support attached hereto as "Exhibit C").

Daniel King, Marrisa's father, writes about Marissa's kindness that "Mara's thoughtfulness and attentiveness have consistently made a positive difference in our family life."  (Daniel King letter of support attached hereto as "Exhibit D").  Marissa's husband, Dan Segal, who continues to stand beside his wife despite her crimes, writes "Mara has always been the straw that stirs the drink, bringing everything together and serving as the center of our life."  (Daniel Segal letter of support attached hereto as "Exhibit E").  And finally, Marissa's mother, Lisa King, who like everybody else was horrified to learn of Marissa's crimes, writes that "Mara has always been the heartbeat of our home.  From the time she was a little girl, she's had a way of putting everyone's else's needs before her own without a second thought.  She is the glue that keeps our family together, the one who listens, the one who cares, and the steady hand we all reach for when things get hard."  (Lisa King letter of support attached hereto as "Exhibit F").

Ms. Segal's kindness wasn't isolated to her immediate friends or family.  She took that same attitude to her daily life and work.  For the past several years, Ms. Segal was employed by Allegheny Health Network, Cancer Center, as a Care Connect Scheduler.  In that capacity, Marissa talked to dozens of patients a day who were navigating one of the most difficult times in their lives.  In that role, Marissa made it her goal to help patients in the only way she could, with compassion, tenderness, and kindness.  According to her friend and co-worker Erica, they "heard time and time again about how kind and considerate [Marissa] is."  (Erica Soyanoff letter of support attached hereto as "Exhibit G.")

In her free time, Marissa is an avid reader and writer.  She has self-published three different novels and has authored dozens of stories on Wattpad (a fan fiction community forum).  Since her incarceration in January, Marissa has read approximately 45 books and has completed nearly three dozen certificate trainings available to her online.  (Transcript of classes attached hereto as "Exhibit H").

Private conversations with Ms. Segal only act to verify what her family, friends, and co-workers have written about her.  In our first conversation, Marissa was only concerned about two things:  how her actions harmed the lives of innocent children, and how her actions destroyed her family.  The length of time she might end up incarcerated was an afterthought.  She was immediately and absolutely willing to accept responsibility for what she had done and to face the consequences, no matter what they were.  Her only goal from the beginning was to do whatever she can to make things as right as possible.

## II.    ARGUMENT

This Honorable Court has tremendous discretion in fashioning its sentence, and may legally sentence Marissa to 90 months of incarceration despite the significant advisory guideline range.  United States v. Booker, 543 U.S. 220 (2005), Gall v. United States, 552 U.S. 38, 128 S.Ct.586 (2007). Largely as a result of the Supreme Court's pronouncements in Gall and Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558 (2007), the sentencing options available to district court judges have "significantly broadened."  United States v. Moon, 513 F.3d 527, 544 (6th Cir. 2008), quoting Gall, 128 S.Ct. at 602.  District courts are now free from any requirement that they mechanically adhere to the tight strictures of the guidelines and, importantly, sentencing courts are not

required to even presume that the guidelines provide an appropriate sentence in a given case.

The Supreme Court explained that the "reasonableness" of a sentence is the controlling query and it further held that any sentence imposed on a defendant, whether below, above, or within the sentencing guidelines, is to be reviewed "under a deferential abuse-of-discretion standard." Gall, 128 S.Ct. at 598.   As set forth in United States v. Russell, 564 F.3d 200, 203 (3rd Cir. 2009), appellate courts must first

> ensure that the district court committed no significant procedural error  in arriving at its decision[.] United States v. Wise, 515 F.3d 207, 217 (3rd cir. 2008).  Second, "[i]f we determine that the district court has committed no significant procedural error, we then review the substantive reasonableness of the sentence[.]" Id. at 218. With respect to the first inquiry, a district court commits significant procedural error by, *inter alia*, failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence[.]  Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 597, 169 L. Ed. 2d 445 (2007), quoted in Wise, 515 F.3d at 217.

If there is no procedural error, an appellate court must "then, at stage two, consider its substantive reasonableness." United States v. Tomko, 562 F.3d 558, 567 (3rd cir. 2009) citing United States v. Levinson, 543 F.3d 190, at 195.   Substantive review focuses not on one or two factors, but on the totality of the circumstances. Id. citing Gall, 128 S. Ct. at 597; United States v. Howe, 543 F.3d 128, 137 (3d Cir. 2008).   Citing Rita v. United States, 551 U.S. 338, 127 S.Ct. 2456, 169 L.Ed.2d 203 (2007), the Gall Court explained that a sentencing court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range".   128 S.Ct. at 596.  See also Kimbrough, supra.   The Third Circuit has recognized this stricture.  United States v. Smalley, 517

6

F.3d 208, 211 (3rd Cir. 2008). In Gall, noting that the sentencing guidelines should only be the "starting point" and the "initial benchmark" of a sentencing proceeding, the Court noted that the Guidelines are not the only consideration. Id. Next, "after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party." 128 S.Ct. at 596. In doing so, however, a sentencing court is not permitted to presume that the Guidelines range is reasonable. 128 S.Ct. at 596-597. The sentencing judge "must make an individualized assessment based on the facts presented" at sentencing. 128 S.Ct. at 597. If the sentencing judge decides that a sentence outside the applicable Guideline range is justified, the sentencing judge "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. Id. The Gall Court explained that a sentencing court must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. Id.; see Wise, 517 F.3d at 215-216 (reiterating Gall sentencing analysis). In United States v. Gunter, 462 F.3d 237, 246 (3rd Cir. 2006), the Third Circuit interpreted Booker to require a district court to comply with the following three steps:

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker;
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account the Third Circuit's pre-Booker caselaw, which continues to have advisory force; and

(3) Finally, district courts are required to exercise their discretion by considering the relevant §3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence.

See also Tomko, 562 F.3d at 567; United States v. Levinson, 543 F.3d 190, 194-195 (3rd Cir. 2008);  United States v. Charles, 467 F.3d 828, 830-31 (3rd Cir. 2006); United States v. Jackson, 467 F.3d 834, 837 (3rd Cir. 2006).

According to Gall, Booker and its related Third Circuit authority, in determining the minimally sufficient sentence, sentencing courts are required to consider the following 18 U.S.C. §3553(a) factors:

1) the nature and circumstances of the offense and the history and characteristics of the defendant;

2) the need for the sentence imposed –
    (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) the kinds of sentences available;

4) the kinds of sentence and the sentencing range established for –
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 944(p) of title 28); and
        (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

5) any pertinent policy statement—
(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing commission into amendments issued under diction 994(p) of title 28); and
(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) the need to provide restitution to any victims of the offense.

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2", as set forth above.   This directive, commonly called "sentencing parsimony" is defined as the least restrictive sentence necessary to achieve the purposes of sentencing.  United States v. Dragon, 471 F.3d 501, 503 (3rd Cir. 2006);  See also Kimbrough, 128 S.Ct. at 575-576 (a district court's judgment that a particular defendant's sentence was sufficient but not greater than necessary is entitled to great weight, even if the district court's judgment is based in part of its disagreement with the policies behind an applicable guideline).

9

**Application of the Section 3553(a) Factors**

Marissa respectfully requests that this Honorable Court impose a 90-month sentence of incarceration. Ms. Segal believes that there are facts and circumstances that exist in this case that should be considered by this Court and which would warrant the variance and the imposition of the requested sentence.

This Court is to first consider the sentencing guidelines as a starting point in fashioning an appropriate sentence. Marissa does not dispute that the advisory guideline range calculated pursuant to the advisory sentencing guidelines is 151 to 188 months of imprisonment. However, as set forth above and below, Marissa believes that there are certain facts and circumstances about her and this case that warrant a variance from this sentence and justify a sentence far below the advisory guideline range, and in fact at the bottom of the Rule 11(c)(1)(C) range of 90 to 120 months.

Ms. Segal recognizes that her actions directly harmed the life of at least one child, and that the possession and re-distribution of other child pornography generally perpetuate the black market for such materials, thereby harming other children. She is disgusted with herself for both how her actions affected the children involved and how they have emotionally destroyed her family. At her core, her crimes are antithetical to the way she lived her life and everything Marissa is about: loving and caring for other people. Those close to her are unable to square Marissa's actions with her lifetime of observable goodness and kindness.

A 90-month sentence of incarceration is not insignificant, especially for a person who has had no contact with the criminal justice system. It certainly reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for

10

the offense.  It further affords adequate deterrence to criminal conduct, and protects the public from further crimes of Ms. Segal.

Although there is no written policy statement which states that people in Ms. Segal's position should be incarcerated for as long as possible, the application of the Guidelines makes it clear that it is in fact the goal.  Ms. Segal's base offense level is 22.  If it remained at 22, her sentencing guidelines would be 41 to 51 months.  After the application of factors which are present in almost every child pornography case (§2G2.2(b)( 2) victim less than 12, §2G2.2(b)(3)(F) knowing distribution, § 2G2.2(b)(4) depiction of an infant or toddler, §2G2.2(b)(6) internet distribution, and §2G2.2(b)(7)(D) number of images for 50 seconds of video), Ms. Segal's adjusted offense level skyrockets to 37, with recommended sentencing guidelines of 210 to 262 months.  This recommended sentence is approximately five times the length of the base offense level recommendation.  Undersigned counsel respectfully suggests that the guidelines, with enhancements for every conceivable factor applicable in many modern child pornography cases, are outrageously high.  As applied to Ms. Segal, who has demonstrated a lifetime of behavior antithetical to her crimes, the recommended sentencing guidelines are unreasonable.

Ms. Segal very clearly appreciates the severity of her conduct and the real-world harm that she has done, but respectfully suggests that a period of incarceration of 90 months, is sufficient but not greater than necessary to comply with the purposes set forth in Section 3553(a).  Ms. Segal is prepared to serve this Court's sentence, no matter its length, and to use that time to do whatever she can to right her wrong.

**III.    CONCLUSION**

For the reasons set forth above, Marissa Segal respectfully requests this Honorable Court grant her a variance and sentence her to a 90-month period of incarceration, which is sufficient but not greater than necessary to comply with the purposes set forth in Section 3553(a).

Respectfully submitted,

Michael E. Waltman, Esquire

/s/ *Michael E. Waltman*
Michael E. Waltman
Attorney for Defendant

Law Offices of Justin J. Ketchel, LLC
429 Fourth Ave., 1600
Pittsburgh, PA 15219
(412) 456-1221 (p)
(412) 532-4787 (f)
michael@ketchellaw.com
PA ID No. 206746